Kevin D. Solonsky
D.C. Bar Number 437119
solonskykd@sec.gov
United States Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9613
Telephone:  (202) 551-5014
Facsimile:  (202) 772-9263

Counsel for Respondent
United States Securities and Exchange Commission

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CRYPTO TRADERS MANAGEMENT, LLC, a dissolved Idaho limited liability company; and SHAWN CUTTING, an individual,<br><br>Movants,<br><br>v.<br><br>UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Respondent. | 1:21-mc-00376-DCN |

**VERIFIED OPPOSITION OF RESPONDENT
UNITED STATES SECURITIES AND EXCHANGE COMMISSION
TO MOTION TO QUASH SUBPOENA
<u>ISSUED TO WASHINGTON FEDERAL, N.A.</u>**

**INTRODUCTION**

Janine Cutting ("Ms. Cutting") moves this Court, pursuant to the customer challenge provisions of the Right to Financial Privacy Act of 1978 ("RFPA"), 12

1

U.S.C. § 3401 et seq., for an order quashing an investigative subpoena issued December 22, 2020 by Securities and Exchange Commission ("SEC") staff ("Staff") to Washington Federal, N.A. ("Washington Federal") seeking Ms. Cutting's bank records at Washington Federal.[1]  This Court should enforce the subpoena because Ms. Cutting's bank records are relevant to a legitimate law enforcement investigation.[2]

## BACKGROUND

**I.    STAFF ISSUES FORMAL ORDER OF INVESTIGATION.**

On October 1, 2020, the SEC issued an Order Directing Private Investigation and Designating Officers to Take Testimony in the Matter of Crypto Traders Management, LLC (D-3957) ("Formal Order").[3]  The Formal Order states that the

---

[1] Crypto Traders Management, LLC ("CTM") and Shawn Cutting (Ms. Cutting's husband) are the only persons named in the caption, but the body of the motion names Ms. Cutting as the sole movant.  As this response explains, CTM and Shawn Cutting have no standing under the RFPA to bring this motion.  See Part I of Argument Section.

[2] Because financial institutions may not disclose records sought until the Government certifies in writing that it has complied with the RFPA, 12 U.S.C. § 3403(b), the filing of a customer challenge automatically stays production of the subpoenaed records.  To minimize delay to Government investigations, the RFPA directs a court to rule upon a customer challenge within 7 days after the Government files its response to a motion to quash.  12 U.S.C. § 3410(b); SEC v. Jerry T. O'Brien, Inc., 467 U.S. 735, 746 (1984).

[3] As required by the RFPA, 12 U.S.C. § 3410(b), the facts in this Opposition are verified by Matthew Skidmore, who is an attorney with the SEC's Division of Enforcement and one of the persons designated by the SEC to perform all duties in connection with this investigation.  See 15 U.S.C. § 78u(b).

SEC has information tending to show that Crypto Traders Management, LLC ("CTM"), "its officers, directors, employees, partners, subsidiaries, and/or affiliates and/or other persons or entities" may have purchased, sold or offered for sale securities, including, but not limited to, ownership interests in a cryptocurrency fund, in violation of the antifraud, securities registration, and broker-dealer registration provisions of the securities laws (Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act"); Sections 10(b) and 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 thereunder).  These provisions prohibit "persons and entities" from, among other things, using devices, schemes, or artifices to defraud; making untrue statements of material facts; and omitting to state material facts in connection with the purchase, sale or offer of securities to any person.  In light of this information, the Formal Order directs "that a private investigation be made to determine whether any persons or entities have engaged in, or are about to engage in, any of the reported acts or practices or any acts or practices of similar purport or object."

Through its investigation, Staff has obtained evidence that Ms. Cutting's husband, Shawn Cutting ("Mr. Cutting"), and his daughter Courtney Lata ("Ms. Lata") may have been running an illegal investment scheme in which they raised over

$6 million in cash and digital assets from at least 450 investors.[4]  Individuals made payments to CTM, which Mr. Cutting owns and controls, for investment in a CTM common enterprise that purportedly purchases and sells cryptocurrencies.  Investors received regular updates regarding their investments and monthly newsletters in which Mr. Cutting touted to investors the regular positive returns of the enterprise.  Mr. Cutting started the investment scheme in 2017 and began raising money that year from investors in the form of cash and digital assets.

Staff has obtained evidence that in 2019 some investors began asking Mr. Cutting to return their investments.  Mr. Cutting returned some money to investors, but many investors have not received any of their investments back.  Mr. Cutting explained to investors that selling their investments would result in significant losses.  At some point in 2020, Mr. Cutting stopped communicating with investors.  In May 2019, CTM was dissolved as a corporation.

Staff has obtained evidence which suggests that Mr. Cutting misappropriated much of the cash invested with CTM.  Mr. Cutting appears to have spent investor money to purchase and/or renovate real estate, vehicles, and other items.  There is also evidence that Mr. Cutting withdrew large amounts of cash from CTM bank

---

[4] Mr. Cutting has previously participated in other fraudulent schemes.  He pled guilty to bank fraud in 2001 and financial theft and fraud in 2008.  See Decl. of Shawn Cutting in Support of Response to Plaintiff's Mot. for Leave to File First Amended Complaint and Application for Writ of Attachment, at Paras. 11, 15, filed in Powell, et al. v. Crypto Traders Mgmt., et al., Case No. 2:20-cv-00352-BLW (D. Idaho).

accounts. Mr. Cutting additionally appears to have moved investor money between and among various accounts, including personal bank accounts.

Staff has obtained evidence that Mr. Cutting wrote Ms. Cutting $4,000 in checks from a CTM account at Chase Bank that was funded primarily with investor money. Also, over the course of 2018 and 2019, Ms. Cutting used a debit card from this account to purchase over $40,000 in items at retail stores, among other places, and wrote checks for more than $11,000 from the account to pay for personal expenses, including home renovations.

Two persons who invested over $640,000 with CTM have sued CTM, Mr. Cutting, Ms. Lata, and others for securities fraud. <u>Powell, et al. v. Crypto Traders Mgmt., et al.</u>, 2:20-cv-00352-BLW (D. Idaho). In their complaint, the two investors detail misrepresentations they allege were made to investors, Mr. Cutting's alleged misappropriation of investor assets, and the manner in which the scheme allegedly defrauded them of their investments.

## II. STAFF ISSUES SUBPOENA TO WASHINGTON FEDERAL FOR MS. CUTTING'S BANK RECORDS.

On December 22, 2020, Staff issued a subpoena to Washington Federal for bank records in the name of Ms. Cutting, including those from accounts with account numbers ending in 1217 and 1316.[5] Staff subpoenaed Ms. Cutting's Washington

---

[5] Staff previously issued subpoenas to two different banks for records in the name of Mr. Cutting, which Mr. Cutting challenged by separate motion. These two matters

Federal bank records in order to obtain information regarding the possible location of investor funds.  Obtaining such information may assist Staff in determining how CTM used investor funds and in locating ill-gotten proceeds for purposes of disgorgement in the event of an SEC enforcement action.  The bank records may also help Staff obtain additional information regarding the scheme being investigated, including what persons or entities may have been involved with the scheme and the extent of their involvement.

On January 7, 2021, Ms. Cutting filed the present motion to quash the Washington Federal subpoena arguing that the subpoenaed bank records are from personal bank accounts.[6]

---

are pending.  Crypto Traders Management, LLC, v. SEC, 1:20-mc-00335-DCN (D. Idaho); Crypto Traders Management, LLC, v. SEC, 1:20-mc-00336-DCN (D. Idaho). Staff also issued a separate subpoena to Washington Federal for bank records in the name of Mr. Cutting which Mr. Cutting has challenged by separate motion.  Crypto Traders Management, LLC, v. SEC, 1:21-mc-00375-DCN (D. Idaho).

[6] On January 7 and 8, Staff took the investigative testimony of Mr. Cutting.  In response to questions concerning whether investor funds had been transferred into his personal bank accounts, Mr. Cutting asserted the Fifth Amendment and did not answer the questions.  When asked what Mr. Cutting did with investor funds, including whether he expended investor funds on his personal expenses, Mr. Cutting also asserted the Fifth Amendment and did not answer the questions.

## ARGUMENT

**I.  CTM AND MR. CUTTING, THE TWO PERSONS NAMED IN THE CASE CAPTION, ARE BARRED UNDER THE RFPA FROM CHALLENGING THE WASHINGTON FEDERAL SUBPOENA.**

Only customers of a financial institution can file a motion to quash a subpoena for bank records under the RFPA. 12 U.S.C. § 3410(a) ("a customer may file a motion to quash an administrative summons").  A motion under the RFPA is required to be supported by an affidavit signed by the customer stating the customer's reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry stated by the Government authority in its notice.  Id.  Neither CTM nor Mr. Cutting, the two persons named in this case caption, have filed the requisite affidavits.  Accordingly, they are statutorily barred from bringing a motion under the RFPA here.

Additionally, CTM cannot move to quash the subpoena for bank records because it does not satisfy the definition of a customer under the RFPA.  A customer is defined as an individual or a partnership of five or fewer individuals.  12 U.S.C. § 3401(4).  Limited liability companies are not customers under the RFPA. Pittsburgh National Bank v. United States, 771 F.2d 73 (3d Cir. 1985) (only individuals and small partnerships may challenge subpoenas under RFPA); Exchange Point, LLC v. SEC, 100 F. Supp. 2d 172 (S.D.N.Y. 1999) (LLC barred from challenging subpoena under RFPA).  Because CTM is a limited liability company,

7

CTM cannot challenge the subpoena for bank records issued to Washington Federal under the RFPA.

## II. THIS COURT SHOULD DENY MS. CUTTING'S MOTION TO QUASH BECAUSE THE SUBPOENAED RECORDS ARE RELEVANT TO A LEGITIMATE LAW ENFORCEMENT INVESTIGATION.

The RFPA provides the "sole" means by which a customer may challenge the disclosure of materials subpoenaed from the customer's bank. 12 U.S.C. § 3410(e); O'Brien, 467 U.S. at 745-46 (1984). Congress intended that RFPA subpoenas would be enforced unless the customer can "'show a factual basis'" for concluding that the records sought are not relevant to a government investigation. See In re SEC Private Investigation of Application of John Doe re Certain Subpoenas ("In re John Doe"), 1990 WL 119321, at *2 (S.D.N.Y. Aug. 10, 1990) (quoting Hancock v. Marshall, 86 F.R.D. 209, 211 (D.D.C. 1980)).

Accordingly, a court must deny a customer challenge to a subpoena issued pursuant to the RFPA if the Government establishes the relevance of the subpoenaed documents to a legitimate law enforcement inquiry. "Upon finding that there is a demonstrable reason to believe that the agency is conducting a legitimate law enforcement inquiry and that the records sought are relevant to that inquiry, the court 'shall deny the motion to quash.'" Sandsend Financial Consultants, Ltd v. Federal Home Loan Bank Board, 878 F.2d 875, 877 (5th Cir. 1989) (quoting 12 U.S.C. § 3410(c) (emphasis added in case)); see also Grafstram v. SEC, 532 F. Supp. 1023, 1025 (S.D.N.Y. 1982). Thus, in response to a customer challenge, the Government

need only show:  (1) "a demonstrable reason to believe that the law enforcement inquiry is legitimate"; and (2) "a reasonable belief that the records sought are relevant to that inquiry."  12 U.S.C. § 3410(c).

### A. THE SEC INVESTIGATION IS A LEGITIMATE LAW ENFORCEMENT INVESTIGATION.

The SEC is directly empowered by Section 20(a) of the Securities Act, 15 U.S.C. § 77t(a), and Section 21(a) of the Exchange Act, 15 U.S.C. § 78u(a), to undertake investigations to determine whether violations of the federal securities laws have occurred.  Here, the Formal Order was entered pursuant to these statutory provisions and provides more than a "demonstrable reason to believe that the law enforcement inquiry is legitimate."  Rodriguez v. FSLIC, 712 F. Supp. 159, 162 (N.D. Cal. 1989).  See also Pennington v. Donovan, 573 F. Supp. 708, 709 (S.D. Tex. 1983) ("An investigation is legitimate if it is one the agency is authorized to make and is not being conducted solely for an improper purpose such as political-harassment or intimidation or otherwise in bad faith"); Dawar v. HUD, 820 F. Supp. 545, 547 n.2 (D. Kan. 1993) (same).  "Congress has endowed the Commission . . . with broad power to conduct investigations – 'such . . . as it deems necessary to' ferret out violations of the federal securities laws and implement regulations, whether consummated or incipient – and in that connection to call for production of relevant materials by those who seem to have them."  SEC v. Arthur Young & Co., 584 F.2d 1018, 1023 (D.C. Cir. 1978) (footnotes omitted), cert. denied, 439 U.S. 1071 (1979);

Feiner v. SEC, 914 F. Supp. 2d 474, 477 (S.D.N.Y. 2012) ("there is a demonstrable reason to believe that the SEC is pursuing a legitimate investigation" because the SEC is charged by Congress with investigating possible violations of the nation's securities laws and the SEC here is conducting its investigation pursuant to a formal investigative order); see also 15 U.S.C. §§ 77s(b), 78u(b).

### B. THE SUBPOENAED RECORDS ARE RELEVANT TO THIS LEGITIMATE LAW ENFORCEMENT INVESTIGATION.

Relevance in the RFPA context is broad, as it is whenever agency investigative subpoenas are challenged. See SEC v. Dresser Industries, 628 F.2d 1368, 1376, 1380 n.28 (D.C. Cir. 1980) (SEC investigative subpoenas should be enforced if the documents sought are "relevant or material" to an SEC inquiry); Casey v. FTC, 578 F.2d 793, 799 (9th Cir. 1978) ("FTC subpoena must be enforced if the information sought is 'not plainly incompetent or irrelevant to any lawful purpose' of the FTC"). The subpoenaed information is relevant if it "touches a matter under investigation," Sandsend, 878 F.2d at 882, or "'might throw light' on a matter germane to the Commission's inquiry." CFTC v. Catalano, 1981 U.S. Dist. LEXIS 15728, *2 (N.D. Ill. 1981); see also In re John Doe, 1990 WL 119321, at *2 ("the statute does not require the agency to show that the records are relevant but rather that there is a 'reasonable belief that the records sought are relevant'"); United States v. Wilson, 571 F. Supp. 141, 142 (S.D.N.Y. 1983) ("the RFPA requires only that financial

information be relevant to a 'legitimate law enforcement inquiry,' and not relevant in a narrow, evidentiary sense").

Here, the SEC has more than a reasonable belief that the subpoenaed bank records are relevant to its investigation. As Staff obtained evidence that Mr. Cutting transferred investor money to Ms. Cutting and that Ms. Cutting used investor money for personal purposes, the bank records may help Staff obtain information regarding the possible location of investor funds. Obtaining such information may assist Staff in determining how investor funds were used and in locating investor proceeds for purposes of disgorgement in the event of an SEC enforcement action. Panaro v. SEC, 1987 U.S. Dist. LEXIS 16810, *2 (E.D.N.Y. Aug. 5, 1987) (financial records may provide information about use of proceeds from transaction under investigation); Rodriguez, 712 F. Supp. at 162 (bank records tracing proceeds deposited to an individual's bank account are relevant to investigation). As it is a basic principle of securities investigations that one "follows the money," see, e.g., Panaro, 1987 U.S. Dist. LEXIS 16810, *2, the subpoenaed records are relevant to the investigation. See also Rodriguez, 712 F. Supp. at 162 (bank records tracing proceeds from illegal transactions deposited to an individual's bank account are relevant to investigation). The subpoenaed records may also provide Staff information regarding the involvement of persons and entities in the scheme under investigation, including Ms. Cutting, and the extent of their involvement.

### III. MS. CUTTING'S ARGUMENT LACKS MERIT.

Mr. Cutting argues that the subpoena should be quashed because her bank accounts at Washington Federal are personal and investor funds were never transferred into the accounts. Declaration at 2. Ms. Cutting's argument lacks merit because Staff is not required to rely on Ms. Cutting's assurance that investor funds were never transferred into her bank accounts. Rather, to properly conduct its investigation, it is incumbent upon Staff to review Ms. Cutting's accounts at Washington Federal to determine for itself the extent of any connection between Ms. Cutting's accounts and the scheme being investigated. Since it is a basic principle of securities fraud investigations that Staff "follow the money," Ms. Cutting's bank account records are clearly relevant to this investigation. See, e.g., Feiner, 914 F. Supp. 2d at 477 ("The SEC's task is to follow the money").

Staff has evidence that Mr. Cutting operated an illegal investment scheme, misappropriated investor funds, moved investor money between and among various bank accounts, including personal bank accounts, and provided investor funds to Ms. Cutting. The records sought are clearly relevant to the investigation and "might throw light" on a matter relevant to the SEC inquiry. See Catalano, 1981 U.S. Dist. LEXIS 15728, *2. Ms. Cutting's argument, therefore, is meritless, and the subpoena should be enforced.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Ms. Cutting's motion to quash the subpoena issued to Washington Federal for her bank records and order the subpoena enforced.

                                            Respectfully submitted,

Dated:  January 28, 2021        /s/ Kevin D. Solonsky
                                        KEVIN D. SOLONSKY